UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                  Case No. 20-20119

Keymon Polly                  Sean F. Cox
                                          United States District Court Judge

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION
## TO SUPPRESS TITLE III INTERCEPTIONS

In this Criminal Case, Defendant Keymon Polly ("Defendant") is charged with one count of conspiring to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(B)(ii) and one count of use of a communication facility in facilitating the commission of a violation of the Controlled Substances Act in violation of 21 U.S.C. § 843(b). (ECF No. 35). The matter is currently before Court on Defendant's Motion to Suppress Title III Interceptions or, in the Alternative for an Evidentiary Hearing. (ECF No. 69). The motion has been briefed, and a Zoom hearing was held on July 7, 2021. For the reasons described below, the Court DENIES Defendant's motion to suppress and DENIES Defendant's request for an evidentiary hearing.

## BACKGROUND

Beginning in 2017, Drug Enforcement Administration ("DEA") agents were involved in a long-term drug trafficking conspiracy and money laundering investigation targeting numerous individuals, including Defendant and his brother Julius Polly. (ECF No. 71-1 at 10-28). During this investigation, inspectors from the U.S. Postal Inspection Service interdicted parcels shipped

1

via U.S. Postal Service from Southern California to Michigan that contained crystal methamphetamine. (ECF No. 71-1 at 10). On January 11, 2018, a confidential source provided information that he/she observed Defendant and Julius Polly purchasing kilograms of cocaine and large quantities of heroin. (ECF No. 72-1 at 13). The DEA agents worked with the confidential source to conduct a controlled purchase of cocaine from Defendant. (ECF No. 72-1 at 11).

After receiving an application from the A.U.S.A., on May 21, 2019, the District Court Judge issued an order authorizing the interception of wire communications to and from the telephone with the number (419) 807-7641 (Target Telephone 1). (ECF No. 78-1). Shortly thereafter, on June 5, 2019, the District Court Judge issued another order authorizing the interception of electronic communications to and from Target Telephone 1. (ECF No. 78-3). On June 20, 2019, the District Court Judge issued an order authorizing the continued interception of wire and electronic communications over Target Telephone 1. (ECF No. 78-5).

On February 26, 2020, Defendant was indicted by a grand jury. (ECF No. 1). On November 4, 2020, a superseding indictment was filed charging Defendant with one count of conspiring to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(B)(ii) and one count of use of a communication facility in facilitating the commission of a violation of the Controlled Substances Act in violation of 21 U.S.C. § 843(b). (ECF No. 35).

On April 23, 2021, Defendant filed this motion to suppress Title III interceptions or, in the alternative, for a *Franks* hearing. (ECF No. 69).

## STANDARD OF REVIEW

A wiretap must be in strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968. *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988). However, there is "no specific formula that must be met for a [wiretap], and that evidence must be judged on the totality of the circumstances and in a reasonable and common sense manner." *Id*. (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The question that must be decided when reviewing a wiretap is whether there is probable cause to believe that evidence of a crime will be uncovered. *Id*.

The Court reviews wiretap orders deferentially. "Since the issuing judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, "great deference" is normally paid to the determination of the issuing judge." *Alfano*, 838 F.2d at 162. Even if the reviewing court may feel that "a different conclusion was appropriate does not require, or even authorize, the suppression of evidence gained through such a warrant." *Id*.

## ANALYSIS

Defendant argues that suppression is warranted because the communications were unlawfully intercepted under 18 U.S.C. § 2518 (10)(a)(i) under two theories: "(1) application for the May 21, 2019 interception order failed to meet the necessity requirements set forth in 18 U.S.C. 2518 (1)(c); and therefore, the June 6, 2019 order and the June 20, 2019 extension are the result of the original illegal wiretap; (2) the government failed to reasonably minimize the intrusions into conversations in violation of the wiretap orders and 18 U.S.C. 2518." (Def's Br. at PageID 262).

3

**I. Necessity Requirement**

Under Title III, a wiretap request must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Title III also requires the district court to determine whether the wiretap application contains facts to support a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518 (3)(c). This is referred to as the "necessity requirement." *U.S. v. Rice*, 478 F.3d 704, 710 (2007).

"The purpose of the necessity requirement is "to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *Id*. (citing *Alfano*, 838 F.2d at 163). In order to satisfy this requirement, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted. *Alfano*, 838 F.2d at 163. Instead, "[a]ll that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *Id*. at 163-164. "[A] purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand would be . . . inadequate compliance with the statute." *Rice*, 478 F.3d at 710 (quoting *United States v. Landmesser*, 553 F.2d 17, 20 (6th. Cir. 1997)).

In each of the three wiretap applications in this case, the A.U.S.A. included affidavits from a special agent of the DEA ("the agent"). (ECF Nos. 72-1, 72-2, 72-3). The agent stated that he was "currently investigating Julius POLLY, Keymon POLLY, and others who are part of a drug trafficking organization (POLLY DTO) in the Detroit metro area. I believe that the

4

POLLY DTO has a narcotics source of supply in California and is bringing narcotics to the Detroit metro area for distribution." (ECF No. 72-1 at 4). The agent believed that intercepting wire communications to and from Target Telephone 1 would advance the goals of the investigation and provide admissible evidence concerning factual details of the investigation. (ECF No. 72-1 at 10).

While the agent's affidavits include a description of a wide range of investigative techniques used or contemplated and why there were insufficient to meet the goals of the investigation, Defendant specifically challenges only four: (1) confidential informants, (2) undercover activity/undercover agents, (3) surveillance, (4) grand jury investigation/immunity and interviews. The Court shall address each challenge in turn.

**Confidential Sources**

In his affidavits, the agent included information from five confidential sources, but ultimately concluded that "these confidential sources of information are not currently in the position to gain information sufficient to accomplish all the goals of this investigation as set forth more thoroughly below." (ECF No. 72-1 at 45). Defendant argues that the DEA failed to fully utilize the information provided by the confidential sources and therefore the wiretap was unnecessary. (Def's Br. at PageID 270-271). Defendant also disputes the agent's assertion that two of the confidential sources were uncooperative based on the confidential sources no longer responding to DEA communications. (Def's Br. at PageID 271).

However, Defendant's arguments are insufficient under *Alfano*. 838 F.2d at 163. It is clear from the agent's statements regarding each of the confidential sources that using confidential sources alone would not accomplish the goals of the investigation. Confidential

5

Sources 1 and 2 were only identified through self-reported names and email addresses through the "tip line" and both became unresponsive to DEA agents/officers requests for information. (ECF No. 72-1 at 45-46). Confidential Source 3 was a not able to be called as a witness, and his/her relationship with Defendant was limited to that of a purchaser and would be unable to provide information about other aspects of the drug organization that was sought by the investigation. (ECF No. 72-1 at 46). Confidential Source 4 provided information on the condition that he/she not be identified nor be required to testify for fear of his/her safety and that of his/her family. (ECF No. 72-1 at 48). Confidential Source 5 does not have the ability to purchase drugs from the organization, and the information he/she provided would not implicate Defendant or their source of supply. (ECF No. 72-1 at 48). From these statements, it is clear that the agent gave "serious consideration" to his confidential sources as an investigative technique but still concluded they would be insufficient to accomplish the goals of the investigation.

The Court finds Defendant's challenge to confidential sources unpersuasive.

**Undercover Agents**

In his affidavits, the agent concluded that "the use of an undercover agent is not a viable option at this point in the investigation" because "several members of the POLLY DTO are biologically related, while other members have had sustained friendships dating back to childhood." (ECF No. 72-1 at 52-53). Defendant argues this is insufficient because the agent has not provided factual support that other members have been friends since childhood. (Def's Br. at PageID 272). However, this is not the legal standard. All that the Government needs to show is that "the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority" *Alfano*, 838 F.2d at 163. The agent did not need to provide evidence to

6

show that other members of the Polly DTO were friends since childhood to show that he seriously considered undercover agents as an investigative technique.

The Court finds Defendant's challenge to undercover agents unpersuasive.

**Surveillance**

In his affidavits, the agent stated that physical surveillance "has been mainly limited to short durations and spot checks of residences and businesses suspected to be occupied or used by Keymon POLLY and members of the POLLY DTO." (ECF No. 72-1 at 50). DEA agents also used electronic surveillance in the form of tracking devices placed on vehicles and GPS tracking of cell phones. (ECF No. 72-1 at 50). However, the agent concluded that surveillance is not sufficient to meet the goals of the investigation because "agents/officers have determined through multiple surveillances that POLLY DTO members are extremely cautious and aware of law enforcement surveillance. They actively conduct counter-surveillance in vehicles and on foot looking for the presence of law enforcement." (ECF No. 72-1 at 51-52). Additionally, the agent noted, "even if surveillance is successful, the success is limited as it tends to provide evidence of contact only rather than the direct evidence necessary to bring this case to prosecution." (ECF No. 72-1 at 52).

To counter the agent's assertions, Defendant argues that the agent "omits how effective the combination of informant information and physical surveillance has been to the investigation." (Def's Br. at PageID 273). However, similar to the reasoning above, this does not meet the legal standard to successfully challenge necessity of a wiretap. All that the Government needs to show is that "the investigators give serious consideration to the non-wiretap techniques

prior to applying for wiretap authority" *Alfano*, 838 F.2d at 163. The Government has met that standard with regard to surveillance.

The Court finds Defendant's surveillance challenge unpersuasive.

**Grand Jury Investigation/Immunity and Interviews**

In his affidavits, the agent concluded that a grand jury investigation via subpoenaing witnesses and granting them immunity to testify would not be successful because: (1) "subjects of the investigation, if called to testify, would most likely invoke their Fifth Amendment privileges;" (2) "it would likewise be unwise to seek Grand Jury immunity for any of the subjects as it might foreclose prosecution of the most culpable people; and" (3) "most of the individuals who have been identified in this investigation participate in various forms of illegal activities and would likely lie under oath unless confronted with facts that would force them to tell the truth." (ECF No. 72-1 at 57).

To counter the agent's assertions, Defendant merely says "it is hard to imagine" why the confidential sources could not be compelled to cooperate by issuance of a subpoena. (Def's Br. at PageID 274). However, Defendant ignores the agent's statements that many of the confidential sources' identities have not been verified and others have only provided information the condition that they not be required to testify for fear of their safety. As above, this challenge does not meet the legal standard to successfully challenge the necessity of a wiretap.

The Court finds Defendant's grand jury investigation challenge unpersuasive.

**A. *Franks* Hearing**

As a part of Defendant's challenge to the necessity requirement, Defendant requests – if the Court does not suppress the wiretap evidence on the face of the affidavit – for a *Franks* hearing as to whether the affidavits contain "a pattern of misleading statements and misrepresentation" regarding necessity of the interception of wire and electronic communications. (Def's Br. at PageID 275; see *Franks v. Delaware*, 438 U.S. 154 (1978)). The Court denies Defendant's request.

As the Government points out, it is unclear whether *Franks* applies to the necessity analysis in the Sixth Circuit.[1] However, it is unnecessary for the Court to decide on this issue because Defendant clearly has not made the "substantial preliminary showing" for a *Franks* hearing. *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2001).

In order to obtain a *Franks* hearing in the Sixth Circuit, "a defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the [wiretap] affidavit and the allegedly false statement is necessary to the finding of probable cause." *Poulsen*, 655 F.3d at 504 (quoting *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)). The defendant must also show "that the alleged false statements were necessary for the magistrate's determination of probable cause." *Mastromatteo*, 538 F.3d at 545.

Defendant does not make this showing. He does not identify any specific factual statements that he believes to be false. Instead, Defendant takes issue with the agent's statements of professional opinion in the wiretap affidavits. (Def's Br. at PageID 276). Defendant argues

---

[1] Defendant only cites a Ninth Circuit case (*United States v. Ippolito*, 774 F.2d 1482, 1486 (9th Cir. 1985)) to support his claim that *Franks* applies to the necessity analysis. (Def's Br. at PageID 275).

9

that the two following conclusions in the agent's affidavit were "misleading" and "misrepresentations": (1) "confidential sources were ineffective to reach the goals of the investigation when in reality the DEA failed to maximize the potential of informants information;" and (2) "that surveillance is ineffective when in reality, surveillance has been very effective." (Def's Br. at PageID 276). However, when one reads the affidavit, both of those conclusions are supported by facts and reasoning to support them.

Regarding the effectiveness of the confidential sources, the agent made the following statements to support his conclusion that they were ineffective to accomplish the goals of the investigation. Two of the confidential sources only provided information via a "tip line" and has failed to respond to further requests from DEA agents. (ECF N. 72-1 at 45-46). Another confidential source who conducted a controlled purchase of narcotics from Defendant would be unable to achieve the goals of the investigation due to his limited relationship to the Defendant. (ECF No. 72-1 at 46-47). Another confidential source only provided information on the condition that he/she not be identified nor be required to testify for fear for safety for his/her safety and that of his/her family. (ECF No. 72-1 at 48). The information provided by the final confidential source could be enough to secure a search warrant for drug locations, but any controlled substances found would only implicate the individuals present and would not implicate Defendant or his sources of supply, which was a goal of the investigation. (ECF No. 72-1 at 48). Defendant has not challenged any one of these statements as false.

Regarding the effectiveness of surveillance, the agent made the following statements to support his conclusion that surveillance would be ineffective to complete the goals of the investigation. First, physical surveillance has been limited to short durations and spot checks because "agents/officers have determined through multiple surveillances that POLLY DTO

10

members are extremely cautious and aware of law enforcement surveillance. They actively conduct counter-surveillance in vehicles and on foot looking for the presence of law enforcement." (ECF No. 72-1 at 51). This counter-surveillance has caused the DEA agents/officers to be reluctant to conduct physical surveillance for fear of further compromising the investigation. (ECF No. 72-1 at 52). Second, the surveillance efforts that have been made are difficult because DEA agents/officers do not know when or how often members are actually at the businesses and residences related to the Defendant and his other co-conspirators. (ECF No. 72-1 at 51). Third, the agent said, "even if surveillance is successful, the success is limited as it tends to provide evidence of contact only rather than the direct evidence necessary to bring this case to prosecution." (ECF No. 72-1 at 52). Defendant has not challenged any of these statements as false.

As Defendant has not alleged that any of the agent's factual statements supporting his conclusions are false, Defendant has failed to make the preliminary showing required for a *Franks* hearing "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the [wiretap] affidavit." *Poulsen*, 655 F.3d at 504. Accordingly, the Court DENIES Defendant's request for a *Franks* hearing.

**II. Minimization of Nonrelevant Conversations**

Under Title III, a wiretap must be executed "in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). "The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." *Scott v. United States*, 436 U.S. 128, 140 (1978). The Sixth Circuit has explained that "the proper approach for evaluating compliance with the minimization requirement is to

11

objectively assess the reasonableness of the monitoring agents' actions in light of the facts and circumstances confronting them at the time." *United States v. Feldman*, 606 F.2d 677-678 (6th Cir. 1979). "It is not enough for the defendants to identify particular calls which they contend should not have been intercepted; they must establish a pattern of interception of innocent conversations which developed over the period of the wiretap." *United States v. Lawson*, 780 F.2d 535, 540 (6th Cir. 1985). Defendants must demonstrate "that the monitoring agents exhibited a high disregard for [their] privacy rights or that they did not do all they reasonably could to avoid unnecessary intrusions." *Feldman*, 606 F.2d at 679.

Here, the government's minimization efforts were documented in four progress reports to the District Court Judge that were generated every fifteen days that interception occurred. (ECF Nos. 72-4; 72-5; 72-6;72-7). In the first progress report, the government reported 2,028 intercepted communications, 83 of which were minimized. (ECF No. 72-4 at 3-4). In the second progress report, the government reported 1,509 intercepted communications, 68 of which were minimized. (ECF No. 72-5 at 4-5). In the third progress report, the government reported 1,286 intercepted communications, 34 of which were minimized. (ECF No. 72-6 at 5-6). In the fourth progress report, the government reported 1,010 intercepted communications, 41 of which were minimized. (ECF No. 72-7 at 5-6).

Defendant relies on the statistical details of the interceptions for his challenge to the government's minimization efforts. (Def's Br. at PageID 279-280). In sum, Defendant argues, "the paltry number of minimized calls indicates that substantial effort was not made to limit the number of interceptions and to minimize the interception of non-pertinent calls." (Def's Br. at PageID 279). This is insufficient to establish "a pattern of interception of innocent conversations which developed over the period of the wiretap." *Lawson*, 780 F.2d at 540. "[B]lind reliance on

12

the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer." *Scott*, 436 U.S. at 140. As here, "when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." *Id*.

The Court finds that Defendant failed to meet his burden to show that the government did not comply with the minimization procedures.

## CONCLUSION

For the reasons above, the Court DENIES Defendant's motion to suppress and DENIES Defendant's request for a *Franks* evidentiary hearing.


Dated: July 21, 2021                               s/Sean F. Cox
                                                   Sean F. Cox
                                                   U. S. District Judge